ANDREW H. KELLOGG

*v.*

FRANK M. SCOTT et al.

[Filed August 7th, 1899.]

1. Where an employer increased the duties of his bookkeeper and collector, so that he was required to perform the duties of cashier, and as such had control of all the cash of the business, a surety on the employe's bond as bookkeeper and collector, conditioned for the faithful performance of his duties, and to pay over all moneys received in that capacity, was not liable thereon for an embezzlement, though accomplished by means of fraudulent entries by such employe as bookkeeper, since the extending of such employe's duties was an increase of the risk and discharged the surety.

2. Where, in an action on an employe's bond, complainant's evidence showed that the surety had been discharged by reason of an increase in the employe's duties not covered by the bond, defendants were entitled to amend their answer in order to place such defence formally on record.

On bill to foreclose, &c. Heard on bill, answers, replication and proofs.

*Mr. Leon Abbett*, for the complainant.

*Mr. Henry H. Dawson* and *Mr. John O. H. Pitney*, for the defendant American Insurance Company.

EMERY, V. C.

Complainant files a bill to foreclose a mortgage given by Mrs. Fish upon her lands to secure whatever might become due to

complainant under a bond given by defendant Frank M. Scott and Mrs. Fish, who was his mother, as his surety, upon complainant taking Scott into his employment. The bond, a joint and several bond of principal and surety, dated November 19th, 1892, in the penal sum of $7,000, contains the following recital and condition :

" Whereas, the above bounden Frank M. Scott is about to act as bookkeeper and collector for the above named Andrew H. Kellogg and by reason thereof, will have the control of sums of money and be required to perform various acts. Now the condition of this obligation is that if the above bounden Frank M. Scott shall well and truly account for and pay over and dispose of all moneys and property of the said Andrew H. Kellogg, which may come into his possession or under his control, and shall well and truly discharge and perform all his duties as such bookkeeper and collector, and if the said obligors or either of them shall pay over to the said Andrew H. Kellogg the sum and amount of any and all loss, damages, costs and expenses suffered or incurred by the said Andrew H. Kellogg, by reason of the failure of the said Frank M. Scott to pay over and account for all moneys and property, or his failure to discharge and perform all his duties as aforesaid, within ten days after notice is given to the said Rosanna E. Fish, of the sum and amount so to be paid, then this obligation to be void," &c.

Scott entered the employment of complainant on November 23d, 1892, continuing until February, 1897. During that time Scott misappropriated his employer's moneys to the extent of about $6,300, and the bill is filed to foreclose the mortgage for their repayment. Mrs. Fish, subsequent to the execution of this mortgage, and in November, 1893, gave a mortgage to the defendant the American Insurance Company, $1,000, for money loaned, and in August, 1895, gave another mortgage for $2,000 to the insurance company to take up the first mortgage of $1,000, which was then canceled, and to secure an additional loan. Fifteen hundred dollars is now due on this mortgage, with interest from February, 1897.

Mrs. Fish died in July, 1896, testate, having devised the lands in question to her son, Frank M. Scott, for life, with remainder to his children, the infant defendants, and giving a power of sale to the defendant executors.

The proofs showed that complainant was engaged in the job printing business in New York City, the volume of which

amounted from $80,000 to $130,000 a year during the time of Scott's employment. Previous to this employment Scott had been convicted of embezzlement from a previous employer, and after serving part of his term of imprisonment had been pardoned. The complainant knew this and the surety, Scott's mother, must also be presumed to have known it. From the time of his employment Scott was not only bookkeeper and collector, but also the cashier of complainant, and the only cashier, and as such had charge of all the cash received in the office, as well as charge of the books and pay-rolls. He continued to be bookkeeper as well as cashier during his whole term of employment. He abstracted money under his control and, to the extent of $5,996, concealed the abstractions by means of false additions or footings in the cash-book from time to time, by which false footings the cash paid out appeared to be larger than was actually paid, to the extent of his embezzlement. Scott also had charge of making out the pay-rolls for the employes and received the cash for their payment and paid the same. By false footings and other false entries on the pay-rolls, he drew out from time to time more money than he paid over to the employes, the deficiency from this source amounting to $312.66, as nearly as can now be ascertained on the present proofs.

Upon this state of facts, disclosed by complainant's evidence, it is insisted on behalf of the insurance company and the infant defendants, that the misappropriations of money were made by Scott in his employment as cashier and not as bookkeeper, and that the bond properly construed covers only such defalcations in Scott's capacity of bookkeeper. The general words of the condition provide that "Scott shall well and truly account for and pay over and dispose of all moneys and property of Kellogg, which may come into his possession, or under his control," and are not in terms confined to money received by him as bookkeeper; but it is claimed that, in reference to bonds of sureties for the faithful performance of the duties of an office or employment, it is a settled general rule of construction that where the bond contains a recital of the character or scope of the employment, this recital will restrict the general words of the condition

to the service specified, unless it expressly appears that it was not intended to be so restricted. The reason for thus limiting the general terms of the condition by the recital is said to be that the object of the bond being a security on employment, if the parties state in the bond the character or scope of the employment, that will be taken as indicating the limit of the surety's contract in the absence of any words which show that the parties intended that the recital shall not have this effect. And many cases have been cited in which, on the construction of the agreement itself, the recitals have been so construed to restrict the general words in the condition. The leading case is *Arlington* v. *Merricke, 2 Saund.*, and the cases are collected in the note (*h*) (at *p. 415, 3*). Also in *1 Ch. Cont. (11th Am. ed.) 765; 1 Brandt S. & G. ch. 6 § 166, &c.*, and *National Banking Association* v. *Conkling, 90 N. Y. 116* (Earl, J., at *p. 121*). But, in my judgment, the liability of the surety for a breach of the condition of the bond will still remain, even if it be held that the clause of the bond relating to the payment of money does not cover money under Scott's control as cashier.

The bond secures " the faithful performance of Scott's duty as bookkeeper," and this certainly includes the true entry and footing of the cash-book and pay-rolls, which as bookkeeper he makes up, as well as the duty of not abstracting his employer's money which would come within his reach in the course of his employment as bookkeeper. For his failure to perform this duty of keeping true entries, the bond for securing his faithful services as bookkeeper is forfeited, and inasmuch as he himself took the moneys, whose abstraction was concealed by the false entries which he made as bookkeeper, the employer, so far as the terms of the bond go, would, I am inclined to think, be entitled to recover substantial damages to the amount of the abstractions, either by the bookkeeper himself in any capacity, or by another, if the abstractions were intentionally concealed from the employer by means of the false entries made by the bookkeeper. *Rochester City Bank* v. *Elwood, 21 N. Y. 88 (1860)*, and *Jephson* v. *Howkins, 2 Man. & G. *366 (1841)*, seem to establish the right to recover such substantial damages as the

result of false entries for the bookkeeper's own profit. But assuming that the loss in question may be held to be the result of the failure of Scott to perform his duties as bookkeeper, the most serious question raised, in reference to the liability of the surety in this bond, arises from the fact that Scott was employed as cashier after the giving of this bond, which recited only his employment as bookkeeper and collector. This employment as cashier, with control as such over all the money of the office as well as of the books—for he still continued as bookkeeper—was a material change by the act of the parties (Kellogg and Scott) without knowledge of the surety, in the nature of the duties of the employes, and it was a change that materially altered the duties of the employment, so as to affect the peril of the surety. The employment which was in the mind of the surety upon giving the bond and which the obligee was about to make, was that of bookkeeper and collector. These descriptions of the character of employment do not of themselves indicate an employment which would give control of the entire cash of a business like complainant's, as well as of its books, nor is there any proof in the case that by the employment as bookkeeper and collector in complainant's business, the control of the cash of the business as cashier was supposed by the parties to be included. The general rule is settled that in the case of bonds to secure the performance of the duties of an office or of an employment, where the nature of the employment is so altered, either by the act of the parties, employer and employe, or of the legislature (in case of public office), that the risk of the surety is materially · altered, the bond is avoided, even though it is forfeited by a breach of the duties of the original office or of the original employment, which was the subject of the guaranty. This general rule has not been questioned since the leading cases. *Bonar* v. *MacDonald, 3 H. L. Cas. 226 (1850)* ; *Pybus* v. *Gibb, 6 El. & B. 902 (1856)*, and these cases were approved and followed in this point in *Manufacturers' Bank* v. *Dickerson, 12 Vr. 448, 451, &c. (Supreme Court, 1879)*.

The facts in this case come within the application of this rule. The bond, as I construe it, was given on the promise to the

surety to employ Scott as bookkeeper and collector, and his employment subsequent to the execution of this bond, as cashier as well as bookkeeper, did make, as I find upon the facts in the case, a material change in the nature of his employment, by which the risk of the surety was increased or varied to her disadvantage, and the bond must therefore be held void as against the surety and those who claim under her.

In this case the defence of discharge of the surety by alteration of the contract of employment was not specially set up in the answer of the insurance company or of the infants, the answers of the latter being formal only, and submitting their interests to the protection of the court. The question, however, was first presented by the complainant's own evidence at the trial, and was fully argued by counsel, and is, in my judgment, the vital question in the case. Counsel may, if they desire, apply to amend the answers in order to put the defence formally on the record. As to the infant defendants, the court usually allows or directs such amendments in either bills or answers filed on their behalf as may be necessary to protect their interests. *Mitf. & T. Pl. & Pr. 419.*