————o————

No. 3428.

(Court of Appeal, Parish of Orleans.)

## W. R. M. WHITNEY vs. MRS. ANNIE MORERE.

1. The objection that a suit is improperly allotted, or that a cause of action is maintainable only in a pending proceeding in another division of the Civil District Court comes too late if urged after issue joined.
2. On the merits issues of fact only are involved.

Appeal from Civil District Court Division A.

F. Rivers Richardson, for plaintiff and appellee.

R. J. Maloney, for defendant and appellant.

MOORE, J. Plaintiff, who is an attorney at law, sues the defendant for $306.55; $56.55 of this amount is claimed to be due by reason of the fact that in the matter of the interdiction of one Pierre Morere, the defendant herein being the curatrix of the interdict, and the plaintiff her Counsel, a final account was filed and homologated, in which account plaintiff was put down for a fee of $50 for filing said account and for $6.55 costs advanced by him, and that the said defendant has failed to pay same. The remainder of the claim, $250.00, is alleged to arise from the fact, that, to quote from the petition : "Petitioner was also employed in his said professional capacity by the said Mrs. Morere to represent her in the succession proceedings of said Pierre Morere No. 70459 Civil District Court, which employment he accepted and carried on *to the great benefit of the said Mrs. Morere.* Petitioner shows that he prepared and was about to file a petition to annul the will of said Pierre Morere and for other purposes when, with the consent of his client the said petition was not filed, but a compromise adjustment was reached with the executor by which his said client *obtained as much as she could possibly have gained by protracted litigation.* Petitioner shows that the amounts involved were large; the duties required of him were arduous and required much time and close attention, and

277

that said services were fully worth the sum of two hundred and fifty dollars." The answer is a general denial.

There was judgment for the plaintiff for the full amount claimed and defendant appeals.

When the case was called for trial the defendant interposed the objection that the Court was without jurisdiction so far as the claim for $56.55 is concerned for the reason "that the same should have urged in the division of the Civil District Court in which the interdiction proceedings were pending, which was Division E."

This objection was overruled and properly so. Jurisprudence has long since settled it that an objection of this character will not avail unless made in *limine* 33 A. 1426; 39 A. 305; 41 A. 570; 43 A. 38–584; 44 A. 190. In the instant case the objection was interposed after answer was filed. This was too late.

On the merits the case is clearly with the plaintiff as to the two items of $50.00 and $6.55, respectively, but we cannot agree with our esteemed brother as to his conclusions with regard to the fee of $250.00 for professional services alleged to have been performed for the defendant, *personally*, by the plaintiff.

It appears that the husband of the defendant was interdicted on the petition of the defendant who was appointed the curatrix; plaintiff being her lawyer in that proceeding.

The accounts therein, duly homologated, show that fees aggregating $600.00 exclusive of the fee of $50.00 allowed him by the final account of the curatrix, were received by the plaintiff.

That subsequently in the settlement and liquidation of the partnership affairs of the firm of P. Morere & Bro. of which the interdict was a partner, the plaintiff represented the curatrix and was again allowed an additional fee.

That still later he represented the curatrix in a partition proceeding instituted by the interdict's brother and was again allowed a fee. Subsequently and pending his attorneyship of the curatrix the interdict died, leaving as his widow the defendant herein and two children the issue of said marriage, both minors and a considerable estate the major portion of which belonged to the community. There were no debt.

Deceased also left a last will and testament in olographic form by which he bequeathed all his property to his said two children, constituting his brother the executor.

The will was probated; inventory and appraisement of his effects made and letters of executorship issued. The inventory amounted to $26,418.66. Three days after the death of the interdict, according to the testimony of the plaintiff, and it is the testimony alone of the plaintiff which will be referred to in reference to the matter of his employment for which the fee of $250.00 is claimed, the defendant called on the plaintiff and informed him that the succession of her husband had been opened by her

brother-in-law and that "a will had been made and she desired me to look at the matter; we came to Court together and read the will; she considered it an injustice to her; xxxx after I looked at the will and I studied the question up, looked up some authorities on it, I looked at some of the evidence in the record and we held, Mrs. Morere and I held several meetings; I suppose half a dozen, that resulted in my drawing up a petition to annul and set aside the will."

The petition which was prepared by the plaintiff for the annulment of the will recites as grounds of nullity that "the said purported testament is not in the handwriting of her husband nor is it signed by him; that for a long time previous to the date of said pretended will and up to the date of his death, the late Pierre Morere was chronically, habitually and notoriously insane and was legally incompetent and mentally incapable of making a testament or executing any valid instrument." The prayer is that "all orders for inventory, etc., issued herein at the instance of Bartholomew Morere (the brother named as executor) or any other person claiming the control of this estate be set aside;" that the purported testament of her late husband be declared illegal, null and void; and "that in the event that the validity of the said purported testament be maintained that she be recognized as the sole owner of one-half of all the property left by the said decedant as surviving widow in community and as such is entitled to the usufruct of the remainder, and she specially *reserves* the *right* to qualify as natural tutrix or administratrix of said estate." This petition was duly sworn to by the defendant and the plaintiff took it down to Court to file it. There he met the Counsel for the Executor with whom he discussed the proposed filing of the petition in nullity, "the result of that conversation was he made representations that Mr. Morere wanted to take care of the interest of the minor children and did not want to do anything derogatory to Mrs. Morere, which resulted in my not filing the petition, but going back to Mrs. Morere and telling her of Mr. Bartholomew Morere's readiness to do what was right in the matter. After some prolonged conversation with her, she consented that the application for annulment of the will be not filed, and instead of that that *they* have her confirmed as natural tutrix, *confirmed by Mr. Morere*, and leave the funds in her possession, both hers and those belonging to the minors."

Understanding that she was willing to accept this "compromise" as it is called by the plaintiff and as advised by the plaintiff, the latter says that he went with the Counsel for the Executor to "get up the various deeds of real estate," and get up the inventory to present to Mr. M. C. Soniat the notary.

Those are the entire services rendered. Summarized they amount to this: Being employed by the defendant to annul a will which, if the averments of the petition are true, is an absolute nullity, and which will dispossessed her of the usufruct of the minors' interest in the property; and to have it judicially declared that she is the

279

owner, as surviving partner in community, of one-half of the property disposed of by the will; and without any effort on his own part to have defendant qualify as the natural tutrix of her minor children, he abstains and refrains from bringing the action on a suggestion from the attorney of the proponent of the will, that if the suit is not brought the Executor himself will have the defendant qualified as the tutrix of the minors and leave the funds in her possession; and he persuades his client to accept this "compromise." Matters stood in *statu quo*, the plaintiff says, "until she qualified as natural tutrix" which was two months after this "compromise."

Dissatisfied with this "compromise," which plaintiff admits in his cross examination was not to the defendant's "financial advantage," the defendant, some two months after the employment, writes the plaintiff that she has "considered the matter over and has decided to contest the will" adding "as you are not in a position to perform the work and also as I have studied over a flaw in the compromise I have decided to employ another lawyer." And she discharged the plaintiff.

Another lawyer was employed who at once qualified the defendant as the natural tutrix of her minor children and filed suit for the nullity of the will; provoked a final account of the executor and filed opposition thereto, attacking particularly the entire item of "liabilities" which consists *exclusively*, (save an item of $25.00), of law charges amounting to the sum of $1497.56-100.

It is quite evident from this showing that the plaintiff's employment terminated by his own action. He had simply prepared the petition which he was instructed to file.

On his own motion he concluded not to do so. His client's right of usufruct is abandoned; her right to her interest in the community is not pressed; the nullity of the will is not sought and the administration of the executor is allowed to continue, resulting in a liability for law charges of $1472.56, and his client, on his suggestion, agrees to same; and all this based *solely* and only on the consideration that the *Executor* is to have the client confirmed as Natural Tutrix, which he does not do, and that the funds in her possession "both hers and those belonging to the minors," be left with her, when the executor was powerless to take the funds from her; what he was to do with the real estate which amounted to some $26,000 is not stated.

He did, however, as we have stated, prepare the petition for nullity of the will, and it is shown that he assisted the notary in the preparation of the inventory taken in the succession by which the separate property and that belonging to the community were made to stand apart. For these services he is entitled to some compensation and we think a fee of one hundred dollars therefor would be quite ample. We will therefore amend the judgment by reducing it to the sum of $156.55 being $56.55 due him as per the final account in the interdiction proceedings and $100.00 fee for all his services recited in the petition and testified to by him.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by reducing the amount thereof to the sum of $156.55 and as thus amended it is affirmed. Appellee to pay costs of appeal.

May 30, 1904.

Rehearing refused June 23, 1904.